This appeal raises two questions. First, does the Court have appellate jurisdiction to go to the President's appeal of his effective denial of immunity? And second, is the President correct that the plaintiff's claims against him in his individual capacity must be dismissed number of grounds that were asserted below? The answer to both questions is yes. With respect to the Court's jurisdiction, it is clear that the President's absolute immunity was effectively denied below. Because absolute immunity is immunity from suit, this Court and the Supreme Court have repeatedly emphasized the need to resolve the immunity question at the outset of the case. When the District Court declined to do so and instead opened discovery, the President was subjected to three trial procedures and thus could appeal the effective denial to this Court, as the Court has recognized in Jenkins and in Nero. Where did the Court decline to do so? The Court failed to act on the motion, which had been pending for a number of months, declined to address multiple requests from us to decide that motion quickly. I had thought that the Court said that he understood and he was thinking about this and he would be ruling on it. That is what the Court said at one point when it issued the motion. I think it was twice. It may have said it twice, but the motions to dismiss by the government were decided by the end of the summer. It was August at the time. We asked for a status conference as discovery began to move forward. Discovery was officially opened by an order of the Court. In December, we again asked for a status conference. Two weeks went by without any indication that the Court was going to address our concern. And with discovery open... Well, on the day you requested another ruling, actually in August, you said at the earliest convenience, and then in December, you requested it again. And on the very day you requested it, the Court ordered discovery. Correct. Six months of discovery program. Well, as I understand the discovery order, it wasn't against the President in his individual capacity. Is that correct? Well, the discovery order reached a number of third parties. It included some of the organizations that are associated with the President's business operations. But that point is neither here nor there because the proceeding of discovery against anybody in a case in which the President remains defendant is subjecting him to pretrial procedures. And Iqbal makes that clear. In Iqbal, you may remember the Supreme Court addressed the question because there was a suggestion there by the parties that they would hold off on doing any discovery with respect to Attorney General Ashcroft. And the Court said no. The development of a factual record, the continuation of discovery, puts the President, in this case, in that case, Attorney General Ashcroft, in an independent position. It's either participate in those proceedings, protect the development of the record, assert whatever rights that your client might have, and therefore be subjected to precedence and the effective denial of your immunity, or be able to take an appeal from subjecting to pretrial procedures. And that's consistent with this Court's decisions. I mean, Jenkins and Nero, you've had situations. What about Alshamari? Are you familiar with that one? I'm sorry? Alshamari. Our Alshamari case. Which Alshamari case is that? It's 2012. It's an in-bank case. And we said that you disputed questions that arise with respect to claims of immunity or subject to discovery if the Court wants to be informed. Even a party whose assertion of immunity ultimately proves worthy must submit to the burdens of litigation until the Court becomes sufficiently informed to rule. Well, that may be true in some respects. That's our in-bank precedent in 2012. Well, certainly there... There was a collateral order qualified immunity case. Correct. It's not absolute immunity. I'll give you that. That's right. So absolute immunity is obviously a stronger protection against any invocation for child proceeding. But even in that case, the fact that the District Court may deny qualified immunity, an appeal comes up, and there is deemed some further procedure that is necessary to reach that point, doesn't really apply in this case because you have all the information that you need to decide the absolute immunity question at this point. And the only other choice, again, and remember that once we did file a notice of appeal, rather than indicating that it was prepared to rule on the question of absolute immunity, it was the Court that raised the question as to whether the President in his individual capacity could be dismissed from the case. So I just don't think there's any basis to assume that an order was forthcoming from the District Court and discovery was open... Well, there's a lot of basis. The District Court told us twice it was coming. Correct, but once it opened... And you have to... I mean, you're all the... This is your only basis for appeal is interlocutory order. Yeah, well, it is the only basis for the interlocutory appeal, the denial of immunity. It's a firm basis. It's been affirmed by the Supreme Court. It all makes it crystal clear, I think, that we have the right to be here. Of course, once we're here, there are other issues that the Court can... I'm sorry, unless we invoke the collateral order doctrine because we conclude somehow that the District Court has denied you immunity, do you have another basis for appeal right now? No, immunity is... The denial of immunity is our basis for appeal in this Court. So, let's talk about denial of immunity. So, you rely on the two cases from this Court? As well as Iqbal, yes. Okay, let's talk about the two cases from this Court, Jenkins and Nero. Correct. Neither one of them are in this case, are they? Well, no, in those cases, you had the benefit of an explicit order from the Court that was going to decline the order. An order denying immunity is different than saying, I am going to reach the question of immunity, but not yet. But denial of immunity is no less a denial by non-action from the District Court as it is from an explicit action from the District Court and refusal to deny. Well, tell me, cite me a case that says that. Well, I think that we cited a number of cases from other circuits that indicate that effective denials are appropriate. Yes, effective denials, but we don't have an effective denial. Are you a litigator or just an appellate lawyer? I dabble in the arts of litigation. So, the District of Maryland historically has had cases waiting to be ruled on for motions to dismiss for three years. So, seven months is nothing. And that is ordinarily not a problem, but setting aside the fact that this is a case that does involve the President of the United States, separation of powers, generally counsel in favor of careful and adequate attention to those matters. Once discovery is open, once there are dozens of subpoenas out in the wild, once the President is being put to the floor. Are there any subpoenas against the President in any capacity? That implicate the President's interests. And again, it doesn't matter as in Ashcroft, you can't sequence the discovery in a way to avoid this problem. But counsel, can I say, there are cases from other circuits about these sort of de facto denials of immunity. But are there any like this where the period of time is so short and doesn't seem unreasonable given that the district court is dealing with the official capacity suit. So, there's no unreasonable delay. The district court is saying, I am going to want it. And yes, discovery is open, but not as against the party who is seeking discovery and I'm sorry, who is seeking immunity. And I understand your point about ICPO that the government, the President's personal capacity lawyers may have to attend a deposition. But there is no discovery that has been ordered against the actual party seeking immunity. I can't find any case like that saying that when you add up no unreasonable delay and discovery against a different party that I will grant you, implicates the interests of the party seeking immunity. And the court is saying, I'm going to rule on. We can say there's been a de facto denial. The lack of a case that is going to be on all fours with the particular district. Well, not even on all four. I mean, I guess, right. So, there's not on all fours, but I guess I am troubled by the fact that it seems to me that for us to say there has been a denial in the face of the district court saying I'm getting to this is a difficult lift. And we don't have the thing that makes it that the other courts rely on to do that. We don't have either of the two things, an unreasonable delay or discovery against the party seeking immunity. So, I'm sort of troubled about how we fill that gap. So, again, I understand you understand this. Under Iqbal, and I think just generally as a matter of how litigation works. Right. You're going to have to go to the depositions. Whether or not. And it's not just depositions. It may be discovery requests. There's all sorts of objections the parties can raise. Of course, you could try to mandamus that. I mean, discovery order. Right. Well, I mean, you wouldn't have to have the president sit in a deposition. You could come into court, get some relief. Again, the problem at that point is our immunity defense, at least, has not even been adjudicated. We are already suffering the denial of immunity. The cases are very clear about that. Okay. If there was a decision on immunity, you can appeal that interlocutorily. Well, again, I don't, and respectfully, I don't think it's that heavy of a lift. Just simply because if the district's saying, and literally in some of those cases, it's one sentence. I'm not going to rule on immunity at this time. I need more information. It's still sufficient to constitute an effective denial of immunity. Then a statement that I will rule on immunity eventually. But then the initiation of pre-trial procedures. I mean, they're really not that different. We said no in the Alshamari case. We said no to that question that you just framed. We said no. Of course, you've got the in-bank court here now. We can change that. And we said no by a vote of 11 to 4. That's true, but this is absolute immunity. So I think that alone is sufficient to distinguish it. And again, I think that it falls— Was there any case that says that? It falls, well, fair enough. I may not have a case directly on point. I don't think the principles can really be disputed. Again, I don't think— Everyone, I think, agrees that absolute immunity is immunity from suit. Well, there's another interest that— You can recognize that there may be some limited discovery to make an immunity ruling. But the discovery in this case was opened up. It was not just the opposite. It was not limited to the immunity ruling. The immunity was put on hold, so to speak. And the court ordered discovery to go ahead under a six-month program in which itself violates the immunity. Correct. And it seems to me it's more than an effective denial. It's almost an explicit denial when you order discovery and not discovery limited to the immunity, but general discovery, which you have to tend and participate in or forego your rights on in a case. This is all the same case as the suit against the president in the official capacity. It's a single suit, and the discovery may be limited to certain issues, but it was not limited to immunity. Correct. And it seems to me when the court orders a program of discovery, it is denying absolute immunity, which covers discovery. I think that has to be right. Otherwise, the virtue of immunity and the repeated recognition by this court and that position of the Supreme Court that immunity has to be disposed of. But Mr. Scrubbage, doesn't that ignore the distinction between the two capacities here, which the Supreme Court has also recognized? And so why would we assume if discovery has only been ordered against the president in one capacity, it comes against him in another capacity? Because the Supreme Court, this court, we've always recognized that difference. Well, the recognition of different capacities doesn't answer the question as to whether the president, even if you have this individual capacity as an entire separate defendant, is being subjected to pretrial procedures. I mean, that's the whole thing of Ashcroft. In Ashcroft, they were proposing not to do any discovery against, I'm sorry, Nick Paul. They were not proposing to do any discovery. I understand everything Rose did. Against entire parties in that case. So if in that case, even discovery that's only succeeded against other parties still implicates the immunity, the right to early determination of immunity. But except, I mean, you have two different, I'm over here, sorry. You have two different cases, one in the president's official capacity, one in his individual capacity. And if this individual capacity lawsuit had been dismissed or never brought, you still would have had to have responded to the discovery in the official capacity suit. So I'm not exactly sure why it matters that the immunity issue hasn't been addressed if your only concern about that is discovery. That's not necessarily correct. The president's naming as a defendant his individual capacity is what necessitated the hiring of additional counsel, preparations. And parties to litigation have different rights than third parties. And I think as they pointed out, the third party discovering this case with a number of corporate organizations. The problem we have here is that we are a party to this action. We've asserted in a very timely fashion our right to immunity and we're entitled to the determination of the immunity before we're subjected to retrial proceedings. And discovery, even against other parties, even against the same party in a different capacity, is still retrial procedures. And I don't think there's any room to read a law to quibble with that point. Well, to raise a question that we talked about a lot in the previous case, what is it that you want from us? In this case, I think the court clearly has jurisdiction and has to exercise that jurisdiction. I know what you think about that. What do you want the order to be? Well, I think that the court is obligated to address article 3 standing in the first instance until it makes that clear. So I think that you have to, at least at a minimum, you have to reach and decide the standing. We obviously think there is no standing under any of the theories. You want the case to be dismissed, don't you? That is correct on immunity grounds, on standing grounds, or the other issues we've identified that are sufficiently dependent upon order. So if we have no jurisdiction, we're going to dismiss it? You're going to get the relief you want, right? If you have no jurisdiction, well, I guess that depends. In this case, we want the case to be dismissed in a way that assures that our right to immunity is vindicated. But the result would be the same. Well, the result may not be the same, depending on what the basis of the dismissal law. It may have conclusive effects. It may have additional effects. It may have benefits to the president's determination on immunity. Nobody forced the plaintiffs to add him to this complaint. They did so out of their own free will. We asserted our timely defense. We want the determination of immunity to avoid it. We did not place him in the untenable position, which, again, would be another effective denial of immunity. Counsel, to go to Judge Motz's question, the order of decision, if we determine we had jurisdiction, you suggested we must first go to Article III. May we not go to absolute immunity? Or does that necessarily have to come behind the Article III question? Well, I think that Steele Co. and this Court's decision in Williams v. Hansen makes it pretty clear that Article III jurisdiction is a threshold question that the Court always has to satisfy itself, not only with respect to its own intellectual jurisdiction, but to the actions of the district court below. So our reading of Steele Co. and of this Court's decision in Williams v. Hansen makes it pretty clear that you do have to satisfy yourself of Article III jurisdiction first. The Court then could proceed to the immunity case, although we think that both the cause of action question and the merits question are sufficiently intertwined with that. The Court has several options available to it. But I think the order of battle that Steele Co. sets out is jurisdictional questions have to come first. And so in that case, you have to go to the Article III standard question. Obviously, even if there's a lot of talk about the effect of the Rule 41, a one-dismissal Court being satisfied on that point, I think that this Court's decision, both before and since, including the decision to immediate energy, support our view and our reading of the cases that once the district court was divested of jurisdiction by time of notice of appeal, and by the docketing of the case in this Court, the district court was divested of any further ability to exercise jurisdiction, including to effect the dismissal of the action. And as the panel pointed out, it would create all sorts of opportunity for mischief and would be inconsistent with the federal rules of appellate procedure to permit a party who is unhappy with the way in which the appeal is proceeding to unilaterally go back to district court, file a notice of dismissal, and dispose of the appeal at that point in time. I don't think that Doe being a public citizen in this Court and a number of other cases, including the immediate energy case, I think doomed the suggestion that notwithstanding divesting of jurisdiction in this Court, the Rule 41, A1, A1 dismissal can still be effected in the district court. I mean, I do, I guess, I would like you to address a concern I have, that it does seem as though, it's an odd posture, right? Because no one is actually advancing this claim at this point. So why isn't it a little bit advisory-ish for us to reach it? Well, I don't think it's advisory-out. I don't think it's correct that they're not advancing the claim. They filed briefs. They have continued to contest the argument. They are not satisfied with accepting a dismissal without prejudice. If they had proposed to dismiss the case with prejudice, we would no doubt have a much harder argument. But we would at least have certainty on behalf of the President that he's not going to be subject to suit by these same parties. We may have more certainty from the decision of this Court that we won't be subject to suit by other states or other entities that assert that they have power under the theories that they have advanced with respect to standing. Actually, it goes further than that. In the argument for the panel, if I recall correctly, the opposing side indicated that they did want it without prejudice and did not want to give up the right to bring the suit again. And they were reserving that right. There are procedures under the federal rules of appellate procedure to effectuate dismissal of an appeal. They do not allow for the unilateral dismissal by the appellee in any instance. And, of course, we've not been approached at all with respect to on what terms we'd be willing to stipulate a dismissal. So I think it's pretty clear, and you're right, that the argument of the panel confirms the President's concerns that he is going to be subject to further action. And, you know, dismissing him from the case for the time being, allowing all the discovery to develop, and then bringing him back in at a later date is just as troublesome as attempting to do it through the discovery process in which the Supreme Court recognized him in the Hick Law case. I do think that the standing question should be decided basically on the same grounds that the panel did. I do think that there's no apparent statutory standing with respect to claims arising against the federal government. I think the competitor injury standing is overly speculative. There's not requirements of an imminent, regressible, traceable injury in this case that even the competitor standing cases have imposed. And the quasi-sovereign interest that was asserted below is very difficult to fathom. It doesn't arise to the level of a concrete injury in heart. And I also think that immunity is a sufficient basis upon which to dismiss us, as it was made clear in the other one, that the lawsuit against the President of this case arises only from his official status as President, and it only violated him on his clause as President, and therefore immunity would be appropriate. I'll reserve my time unless there's further questions. Thank you, Counsel. Ms. Tulin. Good morning, Your Honors. May it please the Court. Leah Tulin on behalf of the District of Columbia in Maryland. We think that this Court lacks jurisdiction over the President's appeal for two independent reasons, and that is where I intend to focus my attention this morning, but I would also be happy to answer any other questions the Court may have. First, the District Court did not effectively deny the President's immunity claim. In fact, as members of this Court have recognized, the District Court was very clear that it intended to rule on the motion. And I'd like to read from Alshmari. Before jurisdiction can be invoked under the collateral order doctrine, a District Court must issue a, quote, that constitutes a complete, formal, and final resolution of the issue. In other words, the Court's ruling must be the final word on the subject addressed. For that reason alone, this Court lacks jurisdiction under the collateral order doctrine. Second, the District of Columbia in Maryland filed a self-executing Rule 41A1A1 Notice of Voluntary Dismissal. As this Court and other courts have recognized, the filing of such a notice operates as a matter of unconditional right, running to the plaintiff, and may not be extinguished or circumscribed by an adversary or the Court. Thus, even if- So, if you had not filed your Rule 41 notice until right now, filed it during the course of oral argument, would that boot our case? So, I believe it would. And that is the balance that's struck in the federal rules. And that's actually what this Court's decisions in both Merrick's Titanic and in In re. Matthews discussed, is that even when there has been an investment of resources by the defendant and by the Court, Rule 41 strikes the balance. It's a clear, right-line rule. If a motion for summary judgment or an answer has not been filed, then a Rule 41 notice is an absolute right of the plaintiff. So, under your view, for instance, you could wait till after oral argument, file your Rule 41, terminate the case. You could even wait till after the opinion's issued, but before the mandate issues, and still file it. Well, I think that is the logic of our position. That's obviously not what happened here. But also, there's a whole line of cases about mootness- view of Rule 41 takes you. It does take us there. But what I would say to that is that there's a whole line of cases, the Munsingware cases, that talk about what the appropriate thing to do to essentially to address the sort of concern about gamesmanship is that if the party who's voluntarily moots the case can't get the benefit of a lower court decision. So, the equitable remedy of vacatur exists to address any sort of benefit that they would get from that. And here, there is no decision. That's no assurance because the dismissal would take place probably under the gamesmanship theory at a stage of the case where the party dismissing was fairly certain it was going to lose. So, the party dismissing knows it's not going to get the benefit of a district court decision in any event because the Court of Appeals appears either from briefs or argument to be unsympathetic to the position. So, you just snatch the case at the 11th hour. The benefit of a district court decision is not as immaterial to you because you're not going to get it. You lose the benefit. We're going to lose the benefit if there's a reversal at the appellate level. So, how is that any kind of safeguard against the sort of gamesmanship with respect to Rule 41 that you seem to be advancing? Well, what this court said in Merrick's Titanic is in that case, at the district court level, there were concerns that the party had come in. There was a motion for preliminary injunction. There had been hearings, three days of hearings on the preliminary injunction motion. And the court was actually concerned that there was a fraud on the court, that the party seeking the preliminary injunction had misrepresented things to the court. And what the court in that case said is that it is especially tempting to force the plaintiff to take its medicine in a case like this where the plaintiff's behavior has been so disassembling, if not downright fraudulent. But our task is to apply the text, not improve upon it. And so, all of the Rule 41 cases contemplate the possibility that a litigant may use a Rule 41 notice of voluntary dismissal in a way that leaves the court and the other side feeling unsatisfied. But they've nevertheless described it as an absolute, unconditional, self-executing right. Do any of those cases actually deal with a dismissal filed when a case is on appeal? So, none of those cases are on all fours in the procedural posture. Isn't that the problem here? I mean, it makes sense, I guess, that where the district court has retained jurisdiction to allow for that kind of liberal, voluntary dismissal, but the case is now before us. And so, why should we defer to a district court dismissal when the case is properly before the appellate court? Well, because for two reasons. The first is that the whole, it's not properly before this court. Well, it is, once a notice of appeal is filed. Jurisdiction invests in the Court of Appeals. Once the notice of appeal is filed, jurisdiction invests in the Court of Appeals. The only thing can happen in the district court is an act in aid of the appeal. In aid of the appeal. Undermining the appeal is a different thing. So the court, district court, once the notice of appeal is filed, can act in aid of the appeal. Otherwise, jurisdictions in the Court of Appeals. That's the law, as I understand it. So the general... We had one of these things last year. It was in the, there's a case called Dominion. And they had one of the issues similar to yours. But there the court of, the district court, had entered a stay. And we did, we skirted the issue because they tried to file the Rule 41 thing after the stay was imposed. We said it was barred by the stay, obviously, on the face-up. So we didn't have to deal with the thing you're presenting. Seems to me you're stretching things and getting off on something you don't need to get into. I don't have any idea why you're getting into this. Only question here is whether there's a, this collateral order appeal can go forward. Where you, where there's never been a ruling. And isn't there an issue there under Alshamari about a control, if we have a controlling question of law that doesn't require factual development. We have, I think, an exception to the prohibition against a collateral order from our in-bank decision. And you're not suggesting there needs to be any factual development here. I mean, it's just a pure question of law, isn't it? So I believe that the immunity question is a question of law in this case. So if I'm right in the way that opinion reads, we don't need to go through the Alshamari factual development issue that that opinion talked about. Well, I still think that the opinion addresses the fact of what constitutes a collateral order. Here, there is no order. And the defendant certainly could have sought mandamus. I got you. So I don't mean to cut you off. But I understand your position that the non-order isn't effective enough. We have to address that first, about whether the discovery here in effect creates that. I certainly understand that. But that issue wasn't presented in Alshamari. So that's a separate decision for us to make. Wouldn't you agree with that? So I think that it's a separate, the question of whether there was an order below is a separate question. But I think this goes actually back to Judge King's question. Because it is true that the general rule under Riggs is that the filing of a notice of appeal divests the district court of jurisdiction to act. I don't want to belabor the point about Rule 41. But there are two important caveats to that. The first is that Riggs itself makes clear that the notice of appeal has to be effective. And if the notice of appeal is defective, then it's treated as a nullity. It is as if it doesn't exist. And so if it's filed from a frivolous order that's obviously not appealable, then it's not effective. That's right. If the defendant in a criminal case files a notice of appeal on Friday to try to keep from getting out of the trial on Monday, we have those things come up. And the district court doesn't have to pay attention to it. It doesn't want to. Because it's a frivolous notice of appeal. But as a general proposition, the notice of appeal puts the jurisdiction in the court of appeals, period. I would disagree respectfully with the period. Because it is equally well-established that there are exceptions to that. It's not just the jurisdiction that the district court can act in aid of the appeal. Under the federal rules of appellate procedure, it can resolve a motion to alter or amend the judgment being appealed. It can appeal and it can address in the first instance a motion for stay pending appeal. It can correct clerical errors. It can address matters collateral to the appeal. I think in answer to Judge Diaz's question before, where the notice of appeal has vested jurisdiction in the court of appeals, where it has been divested by Rule 41. I respectfully disagree with that. These are cases that are cited in our motion to dismiss the appeal at pages eight and nine. Young versus Draper from this court, an unpublished opinion from 2017 per curiam. The plaintiff filed a Rule 41 notice while an interlocutory appeal was pending and the court dismissed the case as moot. Cheeseborough versus Bloom. That's non-precedential, so it doesn't bind us. What else you got? So I have a case from the Fifth Circuit in 1993, McFarland versus Collins. All of these are cited in our brief where a habeas petitioner dismissed his own habeas petition in the district court during the pendency of the appeal. There's also a case, a very recent case from the Ninth Circuit. It was this week, actually, where the defendants, there were four defendants and three of the defendants reached a settlement. So they filed a stipulation of dismissal. The other defendant refused to stipulate to dismissal. So the plaintiff filed a Rule 41 notice and relying on the same cases, Pedrina is the case from the Ninth Circuit, but also citing to Merrick's Titanic and all of the cases that are cited in our brief. They said the district court doesn't have to exercise jurisdiction in order for a Rule 41A1A1 notice to be effective on the time that it's filed. The question of whether this is a jurisdictional question based on Rule 41 or whether it's a factual question, this court is no stranger to dismissing cases that are, on the grounds that they're moot. I mean, we did it in a case, criminal case in which the defendant gone through trial, held a decision held against him, came on armed bomb, headed in the direction of going with the defendant on it. And then the president took an action on clemency and nobody asked for mootness. They didn't go back to the district court. They didn't go anywhere. So you know what happened? The court sua sponte decided that's an executive thing, this is moot and just got rid of it. And that didn't have anything to do with jurisdiction. We had jurisdiction, but the jurisdiction was here to say, it's moot because it's over. Here, for all of our argument about whether this is moot or not, there's not a lot of cases this applies to. It doesn't even come up unless if the defendant has answered or if somebody judge has come up. So it's a very narrow, narrow class of cases in which you have an issue of this type that arises. I agree with you, Judge Wynn, and it's even narrower because it has to be a case where the defendant will not take yes for an answer and walk away with a dismissal. Let me ask you, do you agree with position that the case against the president in his individual capacity is moot? Is that your position? Our position is that the Rule 41 notice... No, I asked you whether you take the position whether this appeal is moot. So we believe it is moot. Yes or no, do you have an answer? Yes. It is moot? We believe it is moot. And yet you refuse to dismiss it without prejudice. Do you still reserve the right to refile the suit? So we are not. Yes, we are not. Well, how can it be moot then? So our position is that it is moot by virtue of the Rule 41A1A1. That's not mootness. That's a procedural rule argument. Mootness goes to whether it's no longer a case or controversy. And if you're reserving the right to file again, we have this whole doctrine in the area of injunctions and otherwise. It's hardly moot when you're sitting. You want to dismiss now, but maybe file later. How can we say that's moot? So the position that we have taken on mootness, the reason that we say it's moot because of the Rule 41 notice is because of the cases that say a Rule 41A1 notice puts the parties in the position as if the case had never been filed. So that is our position with respect to mootness. Can I follow up? Let's assume we do have jurisdiction on this based on the discovery in the case. And let's assume that your Rule 41 notice is not something that deprives our jurisdiction. Do you have any argument that we don't have to address standing first, assuming we have jurisdiction in response to what your colleague argued earlier? Yes, Your Honor. We disagree strongly with the proposition that Steele Co. requires this court to address standing first. And the first principle behind that is that the first thing that this court does is look at what is its basis for appellate jurisdiction. The only basis for appellate jurisdiction is the collateral order doctrine. And the Supreme Court... So I have two points. First... I think you're taking away the assumption I asked you to make. Maybe you're not. Go ahead. No, I'm not. Even assuming that the notice of appeal was effective, still, the basis for jurisdiction is the collateral order doctrine. That's the only basis. What this court said... So the Supreme Court has addressed this in several ways. In Seneca and Tennessee Doe, both of which co-state Steele Co., the court said the courts have wide leeway in choosing among threshold grounds for disposing of a case. So there's no reason... And this court in several cases... There's immunity which is usually raised under Rule 12b-6. And as an affirmative defense, which could be waived, does that get precedence over a jurisdictional issue which goes to the power of the court to act? And Steele Co., I thought, suggested that we couldn't assume our power to act if there was a question of that power. We had to resolve that first. And so it seems to me this is not threshold jurisdictional issues where we could pick even personal jurisdiction which could be waived, maybe following in the rule you're talking about. But this is a 12b-6 affirmative defense. And you're suggesting we should decide that ahead of the power of the court. And I wonder whether Steele Co. really doesn't tell us we have to decide our own power before we go ahead and exercise that power. Well, what the Supreme Court made clear in Sinecam, which is a case that said that it was okay for the court to decide forum nonconvenience before addressing jurisdictional issues. What kind of jurisdictional issues? Personal jurisdiction? There's a lot of difference, you know. Article III jurisdictional issues. Well, I understand. But Article III under personal jurisdiction is quite a different concept from subject matter jurisdiction. Subject matter jurisdiction, we don't even have the power to act. And that was what Justice Scalia was trying to point out that we should pay attention to. And other jurisdictional questions like personal jurisdiction is also jurisdictional, but it can be waived. And it doesn't deprive the court of the ability to act. And so I think that's the important distinction that Steele Co. makes. So what the court in Sinecam said is that the principle underlying Steele Co. is that jurisdiction is vital only if the court proposes to issue a judgment on the merits. And so what cases after Steele Co., after Sinecam say, is that if you have, if there are threshold non-merits issues that are properly presented, and what our argument is that here, that is the only thing that is properly presented under the collateral order doctrine. So you're saying that there's a merits appeal and there's a lack of diversity appeal in a civil suit. If there's a lack of diversity, and we believe there's a lack of diversity, we can still go determine the merits? Well, it's under the hypothetical. So not based on the collateral order doctrine. I asked you in the hypothetical, there is an appeal, and we have the merits, and we have a lack of diversity. We can ignore the diversity, assume that diversity is there, and act on the merits? No, because what... We don't have the power to do that. What the court said is that's when the jurisdiction that's being discussed in Steele Co. matters, when the court purports to issue a ruling on the merits. So the question is not whether the court can skip to the merits and then address other jurisdictional issues. The question is, when the court has before it a number of threshold non-merits questions, what is the proper order of operations? What about statute of limitations? Should we decide a statute of limitations when we don't have diversity? So I think that the... If it... When it is a threshold non-merits... I'm asking you... Why don't you address my hypothetical and we'll get further along. My hypothetical is, should we address a statute of limitations issue when we don't have diversity? So I think there, I would also say that that is a threshold non-merits question, and then the court has wide leeway. That's what the Supreme Court said. We could decide statute of limitations? If it is a way to deny the party an audience to the case on the merits, then the court can decide in which order to dispose of the issues. And here... And where did we get the power to rule on limitations? We don't even have the power to do that. Congress gives us a limited power under Article III, and one of them is diversity. And if we don't have diversity, we don't have the power to act or to rule that limitations is or is not in the vote. It's not a formula that you read a little quote from a case and say, we can decide anything we want if it's convenient or it's not on the merits. We have to understand the notion that if the motion goes to our power to act under Article III, we have to resolve that before we move forward. There are obviously a lower level of disposals, jurisdictions, and then we have quite a bit of leeway to make that decision. And I believe that's where the Supreme Court said. So respectfully, Your Honor, I believe that Senechem and Tenet v. Doe both speak to this question and put an important limitation on the Steele Co. holding. I would also point this court to multiple cases that this court has decided after Steele Co. in which it has expressly declined to address standing or other Article III subject matter jurisdiction issues. So, Adam, you basically are arguing I guess at bottom that we should decide the immunity issue and not the standing issue. And we think that that's appropriate. Is that your position? That is our position. Ms. Tillich, I'm sorry. I didn't understand that as your position. I thought that you thought that there was no final order here and there was no basis for invocation of the collateral order. Yes, so that is correct. So if we have no final order and no collateral order, we have no appealable order. Correct. So all of this discussion is if we do, if there somehow is jurisdiction here, then we look at these very interesting issues and discuss them. But if we should conclude that there is not an appealable order here, we dismiss. That's correct. That's correct. And I ask you... Well, you're back to where... That's where I thought you were at the beginning. Judge Niemeyer got you talking about you need to decide standing and immunity and all this stuff. And we can't get there unless there's an appealable order. I completely agree. We have to decide jurisdiction first. Why are you spending all your time on something? That's what I said earlier. What are you doing? You're talking about all this other stuff about aiding jurisdiction on appeal with Rule 41 and all these other issues. The question here is whether you have a notice of... There's a notice of appeal that was effective and whether there's collateral order jurisdiction. If the answer is no end, stop. No jurisdiction. Dismissal is what they call it. I agree, Judge King. I took the premise of Judge Niemeyer's question to be that he disagreed with me about the motion to dismiss the appeal because he wrote a panel opinion saying that. I think, though, you have to be clear in your answer. The panel opinion has been vacated. But those answers only go to the question if we do have jurisdiction. And then they're all fair game and very interesting. But if we don't have any jurisdiction here, that's all she wrote, right? That's absolutely right, Judge Motz. And that is where I started. The first thing that the court has to decide is whether it has jurisdiction... Can I ask you a question on that? Let's go back to that basic. I think that fairly states your positions. I understood it. I think these were other hypotheticals if we get beyond that. But the main issue, one of the main issues is whether there was an effective denial. And you agree that Jenkins holds that we don't have to have an order if the court effectively denied it. And my question to you is this. When the district court entered, was requested several times to address immunity, and then the district court, which, of course, covers immunity from proceedings, participating in proceedings, including discovery, pretrial proceedings, including discovery. When the district court enters an order scheduling discovery, in which the president's going to have to participate if he's going to stay in the proceeding, is that not effectively denying the right to be spared the onus of participating in pretrial proceedings, including discovery? Under Iqbal. So there are a few points in there, Judge Neumann. No, I'm actually, I'll make it quick. I wanted to elaborate all the details, but the real question focuses on the discovery order of December 3rd. The program for discovery effectively denied the president immunity because the order said you have to go ahead with discovery despite the president's assertion of immunity, which covers discovery. So I don't agree that the discovery order in this case constituted an effective denial, and I'll be happy to elaborate on that, but I'd also like to address- Well, that's the whole issue in your appeal. You just agreed earlier that you argued there's no order to be appealed from, and Jenkins recognizes that you don't have to have an explicit order denying it. You can effectively deny it. And my question to you, isn't that December 3 order ordering discovery program, six-month discovery program, without addressing the immunity, isn't that an effective denial of immunity? That was my question. And the reason that I wanted to start with Jenkins is that I don't agree that Jenkins stands for the proposition that you can have no order. In Jenkins, the court denied a motion to dismiss in which qualified immunity had been raised. The district court ruled on that motion, denied the motion and said, I will address the immunity claim at summary judgment. There was the court- That's the same thing happened here. The district court said three times, I'm going to address it later. I'm going to address it later. It was raised in April. And in April, the court said, we're not going to hear it. We're not even going to allow you to be present at the hearing on June 11. And then on June 11, the court says, I'll address the immunity later. And then on July 25th, it says, I'll do a separate opinion. And then on August 15, the president said, would you please rule on the immunity at your early convenience? Court didn't do anything. And then on December 3rd, the president said again, will you rule on my immunity? And on that date, instead of recognizing the immunity and promise to reach it, the district judge issued an order for discovery, which effectively denies immunity because discovery is protected by immunity. Well, the discovery order was only open, discovery was only open against the president in his official capacity. And I want to- That doesn't make a difference, does it? He has to attend the depositions regardless. Well, I'd like to address, I don't think he has to attend the depositions. He had preserved his objection. Is that what you counseled in a lawsuit? Your client doesn't have to attend depositions? Come on. Honestly, I think that if we had an immunity claim that we believed needed to be addressed, there are a number of things that I would counsel my client to do. Sit back in the living room and watch football games while the litigation goes on. Preserve the objections and decide whether or not to attend the depositions. But you could also seek mandamus. There's no question that the defendant could have done that here. And if he had, the result would be that this court, if it believed that the mandamus standard- But the gravamen of your position is that you just want to keep the litigation grinding on and on and on. Let the district court have it for 18 months or a couple of years. This court of appeals doesn't have jurisdiction under the collateral order doctrine. Immunity isn't, you know, the discovery takes place and there's been no ruling on the immunity until lengthy discovery takes place. And the gist of it all is that the president is tied up in court with litigation that just the purpose of it and the purpose of the suit is to just have a litigation go on and on and on and avoid any kind of resolution. And that, you know, that seems to me, and I wonder what the implications of having the litigation just grind on without resolution. What are the implications of that for separation of powers and for the potential, not just of this suit, but of many, many other suits to simply tie down the presidency and the executive branch of government to a greater extent than it has been impeded before? Because that, you know, that's the end of it. Just keep litigating, isn't it? Judge Gregory, I see my time has expired. Yeah, I think you can answer the question, yes or no, the first part. Then you can go ahead and say, is that your intent? I couldn't guess what your answer would be. Well, there are a number of, there are a number of questions baked into that question. Certainly, our intent is not to tie up the president in litigation. In fact, we've tried to dismiss the individual capacity defended from this lawsuit. And we're also not taking the position that if Discovery had gone forward and we had noticed the deposition of the president, that he would have no effective relief, either from an effective denial or through mandamus. But here, where the district court evidenced an intent to rule was working through the issues in this case. And there's no order from which to appeal. We believe that this court should, at a minimum, we believe that this court does not have jurisdiction. And if we believe that even if this court does have jurisdiction, that the appropriate thing to do is to send it back to the district court. But if the president is denied a right to appeal under the collateral order doctrine, aren't the long range implications of that, that the president's going to be tied up in interminable litigation without a court of appeals ever being able to review it. And what it does is, once again, have the executive branch of government, by virtue of your interpretation of the collateral order doctrine, have the executive branch of government tied up for an indefinite period of time without the ability to seek recourse in the court of appeals for something that, for litigation that may be truly going off the rails. And that's, you know, that's really what's at issue here. We can debate the pros and cons of this wrinkle and that wrinkle of the collateral order doctrine. But the long range effect of this is whether we are setting this whole business that debilitating role of litigation that offends the most basic separation of power principles that you can just keep the executive dangling. So we don't believe that that is this case. And we certainly don't believe that the court needs to go that far in this case in interpreting, in deciding whether there was an effective denial. And even if there was an effective denial, whether this court will then reach out and decide an immunity question in a case that we have said we don't intend to litigate. And so if you said, if you said we don't intend to litigate it, we don't want to litigate it. We'll dismiss it with prejudice. I'll bet you your colleague on the other side of the aisle will be readily prepared to dismiss the appeal. But you have said and even repeated today that you're reserving the right to file it again. And is that what this is all about? Is there some gamesmanship going on here? Well, I don't believe there's gamesmanship. Well, that's irrelevant if there's no jurisdiction. That's all you have to say is it ought to be dismissed for lack of jurisdiction. And any of these other issues are for the district court. At Judge King's point of jurisdiction and the comments about gamesmanship and military tactics, that's what we face all the time with cases that come up here. You may have another motive. I don't know what your motive is. I'm not going to impugn that to you. That's what's going on going on with this case. We have a legal issue before this court. We're not the news channels. We're not the political folks out there arguing about this case. We're not Congress. We're a court of law. We need to decide the legal issue in this case and forget about the question of, well, what's going to happen? Is the world going to turn upside down if we don't, if we do this? Is the president going to have to work too hard? Is he going to have to give up? There's a clear legal issue before us. And if it does go there, there are remedies that can address those concerns. But this is not the time to do it. We don't do it in other cases while we're doing it here. I agree, Judge Wynn. And for the reasons that I've explained, we don't believe that this court has appellate jurisdiction and that the appeal should be dismissed. Thank you, counsel. Thank you. This court unquestionably does have appellate jurisdiction on the case. The case is not moot. The arguments are being pressed. There is relief for the court to give. The president has asked for from the very beginning of this case. The plaintiffs are unwilling to give him anything close to the relief that he's seeking. On the effective denial point, I want to make a couple of things very clear. The notice of appeal that we filed included a notice of appeal of the order of opening discovery. So we do have an order to file a notice of appeal. It's not just simply a notice of appeal on the docket untied to any action by the district court. I also don't think, I mean, I think the court has to grapple with the question that if it's actually going to require something as explicit as what happened in Jenkins. And again, that's not much more explicit than happened here. I'm going to rule later is not much different than I'm going to issue my decision at a later point in time. They're very close. We want this court to take over the discovery too and the official capacity case as well. I'm sorry. You want us to take over discovery as well to manage that? No, no. I think that the subject, that's objecting the president. Subjecting, that's the way I'm subjecting. We're talking about the law in terms of discovery. That's dominant. District courts manage discovery, don't they? Correct. But forcing the president to be subject to pre-trial procedures, including discovery, is an effective denial of his right to immunity. And the default couldn't be any more clear. But you said in the official capacity, you also extended it to discovery. That's the way you was trying to say it's more than just the individual. We included also the question of stopping discovery, even in the official capacity. Didn't you just say that? I'm sorry. Maybe I misspoke. Did you say that? I'm not sure. I said that the opening of discovery against any party in any way, shape, or form constitutes a denial of... But you say that you also included the aspect of discovery in the official capacity. You're asking us for remedy there as well, to stop that. Did you say that? Did you say that? Yes or no? Just now when I took the podium or at some point in the case... On your rebuttal. On your rebuttal. Did you say that? Maybe I misunderstood, but I thought that's what you said. We may have an honest misunderstanding here. I'm not sure what I said, so let me rephrase my point on this. All right. Once discovery was opened against any party in any capacity, the president, as a party in this case, was being subjected to pre-trial procedures that constitutes an effective denial of immunity. And we have a right to appeal from that word, even if the district court's prior statements were somewhat opaque about how long it was going to take to rule on immunity. We're looking at all... We're looking at these various doctrines and to listen to the discussion of mandamus and immunity and the collateral order doctrine. It's almost as if we think this case is really no different from your ordinary slip and fall case. That the character of the litigation is demonstrably different from saying, oh, we face this all the time. That's the response to you. Oh, we face this all the time. No, we don't face it all the time. This is a... I think everyone would admit it is a case with dimensions that come before us that simply do not come before us on the normal Tuesday morning. And you have to take into consideration those separation of powers arguments which are fundamental, go to the place of the judiciary vis-a-vis the presidency and you can't just look at it from the limbs of your... through the limbs of an excessive exercise of force under the Fourth Amendment or a slip and fall case or some other case that would grist with the mill of judicial business. This case is different. I certainly agree that this case presents a lot of unprecedented and highly important issues in incorporating separation of powers concerns and those weigh in favor of a lot of the arguments that have been advanced so far. But it does... I mean, this is not a case where the parties have agreed and I just want to address a couple of points that my colleague on the other side made during her argument. A number of the cases that she cited were cases where the appellant filed the Rule 41A1 dismissal. And in that case, obviously there's no relief that can be granted at the court of appeals and FRAP 42 is consistent with allowing appellants to voluntarily dismiss their cases. In a couple of the other cases, the appellant did not object to the appellant's dismissal of the case under Rule 41A. So there was no reason for the court to pass upon it. And in both instances, those were filed back in the district court? Those were filed in the district court. So there's jurisdiction in the district court to handle if the appellant does it or if the parties agreed to do it? No, I think because the appellant can always abandon their appeal under Rule 42, it's essentially, it makes no difference. That's a Rule 41 back in dismissal. It's not a 42. It's not a matter brought before this court. If the transfer of jurisdiction by notice of appeal occurs so that you can't go back there, then unless you said you can't. No, my point is- There is some jurisdiction to go back and handle it if it's the appellant or if they agree? No, and I think this actually makes, listen, I think in the Fifth Circuit case that what the courts are doing in that case is treating the motion filed at the district court. A lot of those cases involve pro-state defendants. They're treating the motion filed at the district court as if it was a motion to dismiss the appeal under FRAT 42. That's what I'm saying. Well, they didn't do it in the Younger case here in which we sent it back where the party stipulated to the 41 the dismissal in the district court. Well, so in some of those cases- That was this court. And again, if they can go back and stipulate in district court, there has to be some jurisdiction back there. In some of those cases, the parties may have essentially agreed that the appeal was moot. So in that case, at that point, maybe the case should be remanded and the dismissal can take effect. There's no agreement here that the case is moot. I think that Jeannie Meyer's questioning my friend on the other side made that point clear. With respect to the argument regarding the threshold issues, I did want to make a point. She raised CITICAM and MEPI-DOE. Those cases do make clear that the court can choose among certain threshold issues, especially issues that go to the power of the courts. And so, for example, arguments about whether the court has the powers of recognizing a cause of action in some cases may constitute a threshold issue. There are other threshold statutory issues that sometimes go to the power of the court to act. But what Steelco and what those cases still simply say is that outside of jurisdiction or other similar threshold issues, you have to respect those issues. Help me understand, Lieutenant Video, why wouldn't we think about the Totten rule as being very similar to absolute immunity? And we can talk about quality immunity, but absolute immunity in the Totten rule, to the extent that you understand where Totten comes from, it seems to have a similar idea to absolute immunity. And of course, in Lieutenant Video, the court said we can reach that as a threshold issue. Why wouldn't we think about absolute immunity in a very similar light? Yeah, to be fair, I think there was a fair amount of disagreement as to what the precise nature of the Totten rule was. Yeah, I'm not sure either. But the point being is that it seems to have a similar foundation. Why wouldn't that Totten rule, which the court said under Steelco, we can reach that as a threshold matter. Why wouldn't that fall in the same category of absolute immunity, which seems to have a similar foundation? I think the concern, I think Judge Niemeyer got at it, is that immunity is a defense on the merits and ruling on immunity is considered merits ruling. We cited a couple of cases for that in our opposition brief. And so would the Totten rule would be the same way? Again, I think that was the subject of some dispute in Sinecam and in Lieutenant Video. It's a hard issue, and I'm not trying to suggest that there's an easy answer to it. I think that, again, the standing case is very easy. The absolute immunity case, although we feel very strongly about it, we recognize there's somewhat of a dearth of precedent on presidential immunity. There's two cases. This case, we think, is a lot closer to Nixon than it is to plainly Jones, which I'm happy to expound upon. But the court, to sum up my point, the court clearly hasn't held jurisdiction. And I want to make one other point about this case being done. Even if this case were to go back, there's another lurking issue that's going to bring all these issues straight back to the forefront, which is whether their rule 41, A1, A1 dismissal was actually effective because it did not dismiss the action as a whole. It only dismissed some claims against the president in his individual capacity. That remains an issue that we would absolutely have the right to. Well, the rule talks about action. And then later in the rule, it talks about a claim in an action. And so your point, I think, is well taken, is whether the rule is applicable only when they're willing to dismiss the action. Correct. And in this case, I think that there are other rules in the gross civil procedure that specifically address adding or dropping claims or adding or dropping claims. Rule 54. It doesn't make any sense to read rule 41 to basically take the place of those rules. One thing you know from a case like Mitchell v. Forsythe is that the extension of discovery and the extension of litigative proceedings is absolutely at odds with the whole purposes of immunity. The whole purposes of immunity are to get a case resolved at a relatively early stage rather than a relatively later stage. Otherwise, the value of the immunity is entirely lost. And to the degree that the district court proceedings on the subject of remand go on and on and on, the value of the immunity drops down and down and down. And you have to look at this from the purposes of immunity and the particular cogency of immunity when you're bringing an action against the President of the United States. The purposes of immunity don't just dissolve when the President of the United States is a defendant. They are magnified. And that's, you know, that's what we're talking about here. If I may just respond briefly. Certainly. Yes, I think that's right. Do you disagree with us? No, no, but without disagreeing the point about the importance of this case involving the President, which we absolutely agree with and which a number of our actual arguments on the various legal defenses go to. I mean, this is not the only context in which the court considers absolute immunity claims. And there is a real problem if there's going to be a decision that you need an explicit order addressing the claim at which immunity is going to be made that is going to effectively deny all the benefits of absolute immunity. And it's going to run about a numerous Supreme Court precedence requiring courts to address immunity claims, especially absolute immunity claims at the earliest stage of litigation. Unless there are further questions. Thank you very much. Thank you, counsel. We'll ask the clerk to adjourn the court for the end of the term. Signing that and we'll then come down and greet counsel. This honorable court stands adjourned. Signing die. God save the United States and this honorable court.
judges: Gregory, Wilkinson, Niemeyer, Motz, King, Agee, Keenan, Wynn, Diaz, Floyd, Thacker, Harris, Richardson, Quattlebaum, Rushing